**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number:  **11-07438-hb**
Adversary Proceeding Number:  **14-80131-hb**

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The relief set forth on the following pages, for a total of 30 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**09/03/2015**



US Bankruptcy Judge
District of South Carolina

Entered: 09/03/2015

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Frederick Richard Thoennes, III,<br><br><br>Debtor(s). | C/A No. 11-07438-HB<br><br>Adv. Pro. No. 14-80131-HB |
| Andrew P. (Andy) Ballard,<br><br><br>Plaintiff(s),<br><br>v.<br><br>Frederick Richard Thoennes, III,<br><br><br>Defendant(s). | Chapter 7<br><br>**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

**THIS MATTER** came before the Court on the Motion for Summary Judgment ("Motion") filed by Defendant Frederick Richard Thoennes, III ("Thoennes")[1] and the Objection of Plaintiff Andrew P. Ballard ("Ballard").[2]   Ballard's Complaint, filed after Thoennes' bankruptcy discharge was entered, asks the Court to find that the debt owed to him is not affected by Thoennes' discharge.   Thoennes' Motion asserts that, even accepting all allegations of the Complaint as true, judgment should be entered in his favor as a matter of law.[3]   Pursuant to Fed. R. Civ. P. 56, made applicable to this proceeding by Fed. R. Bankr. P. 7056, the Court finds that the Motion should be granted in part and denied in part.

---

[1] ECF No. 23, filed May 20, 2015.
[2] ECF No. 31, filed July 10, 2015.
[3] When considering the Motion, the Court reviewed the record that included the Complaint and attached exhibits, Thoennes' Motion and attached exhibits, the docket in the Chapter 7 bankruptcy case and Ballard's Objection and attached exhibits pursuant to the standard of review set forth in Fed. R. Civ. P. 56.

## PROCEDURAL HISTORY AND UNDISPUTED FACTS

This dispute involves the ownership and control of Warpath Development, Inc. ("Warpath"), a company formed to develop a marina and related properties on Lake Keowee, South Carolina.  After Ballard's business relationship with Thoennes and the other partners of Warpath began to deteriorate, Ballard filed a lawsuit against them in state court in July 2008 (the "State Court Action").[4]  Ballard alleged various causes of action, including shareholder oppression seeking judicial dissolution as relief.[5]  After a three-day trial, an order in the State Court Action was entered on May 4, 2010, finding Thoennes and the other defendants liable for shareholder oppression and ordering them to buy out Ballard's shares in Warpath (the "Trial Order").[6]  A summary of the state court's findings in the Trial Order follows.

Ballard is the organizer of Warpath.  After Ballard and the defendants discussed the defendants' potential participation in Warpath, the parties entered into a Stock Purchase Agreement dated May 29, 2007.  Under the parties' Stock Purchase Agreement, the defendants became the majority shareholders after receiving 80,000 of the 100,000 shares authorized to be issued by Warpath's Articles of Incorporation.[7] After the defendants acquired 80% ownership of the corporation, they became unhappy about the development of Warpath and decided they wanted Ballard out of the corporation.  The defendants then removed Ballard as a director by refusing to elect him as one of four directors at the first shareholders meeting after they obtained

---

[4] *Andrew P. (Andy) Ballard, individually and derivatively on behalf of Warpath Development, Inc. v. Tim Roberson, Rick Thoennes, Rick Thoennes III, and Warpath Development Inc.*, C/A No. 2008-CP-23-5739.
[5] ECF No. 1, Ex. A.
[6] *Id.* at Ex. B.
[7] Of the 80,000 shares, 20,000 were purchased from Ballard (who owned 40,000 shares at that time) for $1,000,000 paid for by one of the state court defendants other than Thoennes, and 60,000 shares were issued from the corporation itself in exchange for future services.

control of the corporation.  Thereafter, Ballard was excluded from the management and planning for Warpath and was not kept informed concerning any plans for financing the development of the project or updates on the status of the development.

After the defendants elected themselves as directors, they passed a board resolution proposing Warpath issue additional shares "in order to raise capital, pay expenses and offer employee incentives."[8]  The Board then presented the resolution to the shareholders, which was passed by the votes of the defendants, with Ballard dissenting.  However, the shareholders of Warpath never authorized an amendment of the Articles of Incorporation to increase the amount of authorized shares beyond 100,000.  Thus, this resolution was contrary to the Articles of Incorporation, and any issuance of stock by Warpath beyond the 100,000 shares already issued would be in violation of the Articles of Incorporation.  Upon the issuance of the additional shares, Ballard's ownership in Warpath "would have been reduced to 2%, a tenth of his 'final holdings' as provided in the Stock Purchase Agreement."[9]

Ballard's State Court Action sought relief under S.C. Code §§ 33-14-300[10] and 310,[11] which govern judicial dissolutions of corporations.  The Trial Order concluded

---

[8] ECF No. 1 at Ex. B.

[9] *Id.*

[10] This statute is titled "Grounds for judicial dissolution" and provides:

> The circuit courts may dissolve a corporation . . . (2) in a proceeding by a shareholder if it is established that . . . the directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, fraudulent, oppressive, or unfairly prejudicial either to the corporation or to any shareholder[.]

S.C. Code Ann. § 33-14-300.

[11] This statute is titled "Procedure for judicial dissolution" and states, *inter alia*:

> In any action filed by a shareholder to dissolve the corporation on the grounds enumerated in Section 33-14-300, the court may make such order or grant such relief, other than dissolution, as in its discretion is appropriate, including, without limitation, an order . . . (4) providing for the purchase at their fair value of shares of any shareholder, either by the corporation or by other shareholders.

S.C. Code Ann. § 33-14-310(d).

that under those statutes, a court may "provid[e] for the purchase at their fair value of shares or any shareholder, either by the corporation or by other shareholders" and may "direct[] or prohibit[] any act of the corporation or of shareholders, directors, [or] officers" upon a finding that "the directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, fraudulent, oppressive, or unfairly prejudicial either to the corporation or any shareholder." S.C. Code §§ 33-14-300(2)(ii), 310(d)(3) and (d)(4). However, in this case, the Trial Order found that the defendants only "acted in a manner that [was] *illegal, oppressive, and unfairly prejudicial* to Ballard, within the meaning of S.C. Code § 33-14-300(2)(ii),"[12] omitting a finding that they acted in a "fraudulent" manner to the corporation or any shareholder. The Trial Order concluded that "the proper equitable remedy [was] to provide for the purchase of Ballard's shares at their fair value by the defendants, jointly and severally, as set out in S.C. Code § 33-14-310(d)(4) . . ."[13]

Although the Trial Order found liability on the part of Thoennes and the other defendants, no damages or debt amount was established at that time. The state court defendants, including Thoennes, appealed the Trial Order.

While this appeal was pending,[14] Thoennes filed a voluntary petition for Chapter 7 relief on December 2, 2011. Thoennes' Schedule F acknowledged a debt to Ballard and described the claim as "business debt" with the amount "unknown."[15] Ballard was included on Thoennes' creditor matrix through his counsel.[16] A "Notice of Chapter 7 Bankruptcy Case,

---

[12] ECF No. 1 at Ex. B (emphasis added).
[13] *Id.*
[14] Oral argument in the appeal did not take place until February 27, 2012.
[15] C/A No. 11-07438-hb, ECF No. 1, filed Dec. 2, 2011. Ballard is listed on Thoennes' Schedule F as follows: Andy Ballard, c/o Wyche Burgess Freeman & Parham, P.O. Box 728, Greenville, SC 29602.
[16] *Id.* Ballard is listed on Thoennes' creditor matrix in the same manner as Thoennes' Schedule F.

4

Meeting of Creditors & Deadlines" was issued the same day, providing the date, time, and location of the first meeting of creditors and the deadline of March 19, 2012, to file a complaint objecting to the discharge of the debtor or to determine the dischargeability of a particular debt.[17]

In his initial Statement of Financial Affairs, Thoennes described the pending State Court Action as "breach of contract" and indicated it was dismissed.[18]  An Amendment was filed on March 6, 2012, that included the Trial Court Order.[19]  On January 20, 2012, a Notice in Thoennes' bankruptcy case was entered and served, instructing creditors who wish to share in any distribution of funds to file a proof of claim.[20]  The deadline for filing a proof of claim was set at 90 days after the mailing of the notice, or April 19, 2012.  On March 26, 2012, Thoennes was granted a discharge under 11 U.S.C. § 727[21] and Thoennes' case was closed on March 28, 2013.[22]  It is undisputed that Ballard received notice of Thoennes' bankruptcy, the applicable deadlines, and Thoennes' discharge.  Ballard did not file a motion for relief from the automatic stay, a proof of claim, a motion to conduct an examination of Thoennes pursuant to Fed. R. Bankr. P. 2004, or otherwise participate in Thoennes' bankruptcy case while it was pending.

Approximately five months after Thoennes' discharge was entered, the South Carolina Supreme Court affirmed the Trial Order on August 29, 2012, finding:

---

[17] *Id.* at ECF No. 5.

[18] *Id.* at ECF No. 1.

[19] *Id.* at ECF No. 21.

[20] *Id.* at ECF No. 14.

[21] *Id.* at ECF No. 27.  Further reference to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will be by section number only.

[22] *Id.* at ECF No. 36 (the bankruptcy case was closed after the closing an adversary proceeding brought by another party against Thoennes, *Odom, et al. v. Thoennes, III*, Adv. Pro. No. 12-80053-hb (Bankr. D.S.C. 2012)).

> illegal or fraudulent conduct is not required under section 33-14-300(2)(ii), and we agree with the circuit court that the evidence in the record shows oppression by the majority in this instance . . .
>
> . . . .
>
> We find the record evinces a clear intent by Appellants to "freeze-out" Ballard and exclude him from involvement with Warpath and from the benefits of ownership . . . We therefore affirm the circuit court's ***finding of oppression*** and its requirement that Appellants purchase Ballard's stock at fair market value.

*Ballard v. Roberson*, 399 S.C. 588, 595, 597–98, 733 S.E.2d 107, 110, 112 (2012) (emphasis added) (footnote omitted).  The State Court Action was remanded and a valuation hearing to determine the fair value of Ballard's ownership interest in Warpath was held on August 6, 2013.  In a subsequent Order Appointing Receiver entered on April 23, 2014, the state court found that "[a]t the valuation hearing, plaintiff presented undisputed evidence that the conduct of the defendants previously held to constitute shareholder oppression had continued unchanged and unabated up to the time of the [valuation] hearing."[23]

On October 3, 2013, the state court entered an Order of Judgment ("Judgment") finding the fair value of Ballard's ownership interest to be $3,589,297, and ordering the state court defendants, jointly and severally, to pay Ballard that amount within 90 days of entry of the Judgment and in exchange, Ballard would relinquish his shares in Warpath.[24]  The Judgment was appealed by the state court defendants on December 20, 2013, and they filed a request for stay pending appeal on January 7, 2014, which was denied on March 27, 2014.[25]

Meanwhile, Ballard served Thoennes with Post-Judgment Interrogatories and Requests for Production of Documents.[26]  On March 7, 2014, Thoennes responded by

---

[23] ECF No. 1 at Ex. F.
[24] *Id.* at Ex. G.
[25] *Id.* at Ex. H.
[26] *Id.* at Ex. I.

objecting to each request on grounds that any debt to Ballard was discharged on March 26, 2012, pursuant to § 727 and, because the discharge is a permanent injunction, Ballard is prohibited from collecting the Judgment from Thoennes.[27]  Ballard asserts, and Thoennes does not dispute, this was the first time Thoennes raised his discharge as a bar to collection in the context of the State Court Action.

More than two years after Thoennes' bankruptcy discharge, Ballard filed this adversary proceeding in the bankruptcy court on November 17, 2014.  Finally, as a result of the pending state court appeal, the Judgment was reduced to $3,125,000 on July 15, 2015 (the "Final Judgment"). *Ballard v. Roberson*, No. 2015-UP-364, 2015 WL 4275343, at *4–5 (S.C. Ct. App. July 15, 2015).  The hearing in this Court on the instant Motion was held on July 21, 2015.

Ballard's Complaint alleges four causes of action: (1) Thoennes failed to assert his discharge in the State Court Action and is barred from raising it as a defense to payment of the Final Judgment[28] by laches, estoppel, and/or waiver; (2) Thoennes is barred from raising his discharge as a defense to the Final Judgment by virtue of failing to include material information in his bankruptcy petition and thereby concealing assets (unclean hands); (3) the Final Judgment is excluded from the discharge by § 523(a)(19) because Thoennes engaged in conduct constituting fraud, deceit, or manipulation in connection with the purchase and sale of securities and/or the debt is for violations of South Carolina's securities laws;[29] and (4) any

---

[27] *Id.* at Ex. J.

[28] Although not entered until after the Complaint was filed, the Final Judgment amount represents the amount of the debt in controversy relevant to this Motion.

[29] Ballard did not specifically plead that Thoennes violated South Carolina's securities laws; rather, the Complaint refers to § 523(a)(19) in general, not a specific subsection. *See Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008).  The Court will, therefore, construe the Fourth Cause of Action of the Complaint liberally solely for purposes of this Motion.

post-petition[30] acts of shareholder oppression by Thoennes against Ballard and any resulting

portion of the Final Judgment survived the bankruptcy discharge.

Thoennes argues that the relief requested by Ballard should be denied as a matter of

law because: (1) the equitable bases for relief would require the Court to use its equitable

powers under § 105 in contravention of the plain language of § 727 and applicable law; (2)

§ 523(a)(19) is inapplicable to the debt in question because it did not arise from a violation of

South Carolina's securities laws or from fraud, deceit, or manipulation in connection with the

purchase or sale of any security; and (3) any oppressive post-petition conduct by Thoennes is

a part of Ballard's pre-petition claim, which was discharged.

### DISCUSSION AND CONCLUSIONS OF LAW

### I.  JURISDICTION

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(a) and

(b).  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and the parties have

consented to this Court entering a final order in this matter.

### II.  STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), made applicable to this adversary proceeding by Fed. R.

Bankr. P. 7056, "[t]he court shall grant summary judgment if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a).  "[S]ummary judgment should be granted in those cases in

which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry

into the facts is unnecessary to clarify the application of the law." *Hyman v. Ford Motor Co.*,

142 F. Supp. 2d 735, 738 (D.S.C. 2001).

---

[30] Although Ballard used the term "post-discharge" in his pleadings, § 727 discharges debts from the date of the
order of relief. *See infra* at 28.

> The fact that there exists an important, difficult or complicated question of law is not a bar to a summary judgment where it is clear there is no genuine issue of a material fact.  Resolution of the legal issues will not be rendered easier by going through the trial when there is no issue of fact to be tried.  In this regard, summary judgment is appropriate when the parties merely dispute the significance of the events but do not dispute which events actually occurred.

*Bradacs v. Haley*, 58 F. Supp. 3d 514, 521 (D.S.C. 2014) (internal quotation marks and citations omitted).

On summary judgment, the court must "view the facts and the reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *United Rentals, Inc. v. Angell*, 592 F.3d 525, 530 (4th Cir. 2010).  If the movant provides evidence sufficient to establish its right to judgment, "the non-movant must proffer countering evidence sufficient to create a genuine factual dispute." *In re Proveaux*, C/A No. 07-05384-JW, 2008 WL 8874286 at 3 (Bankr. D.S.C. Mar. 31, 2008) (quoting *In re Dig It, Inc.*, 129 B.R. 65, 66 (Bankr. D.S.C. 1991)).  "A genuine issue of fact exists when there is sufficient evidence on which a reasonable jury could return a verdict for the non-moving party." *Orgain v. City of Salisbury, Md.*, 305 F. App'x 90, 97 (4th Cir. 2008).  An issue of fact is considered material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986).

### III.  BALLARD'S EQUITABLE CLAIMS

#### a. *BALLARD'S CLAIMS FOR EQUITABLE RELIEF MUST BE DENIED AS A MATTER OF LAW GIVEN THE STATUTORY FRAMEWORK OF §§ 523 AND 727*

Some relief under §§ 523 and 727 that may have been applicable to the facts here is time barred. *See* 11 U.S.C. §§ 523(c) and 727(e); Fed. R. Bankr. P. 4004(a) and 4007(c).  As a result, Ballard's Complaint asserts that the Court should use § 105(a) to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title,"

to enforce the equitable theories of laches, estoppel, waiver, and unclean hands, and allow pursuit of the Final Judgment against Thoennes.

The Supreme Court recently addressed the scope and application of § 105(a) in *Law v. Siegel*, __ U.S. __, 134 S. Ct. 1188, 188 L. Ed. 2d 146 (2014), where the debtor was found to have committed fraud. The Supreme Court held that the equitable remedy for the debtor's misconduct fashioned by the bankruptcy court was unauthorized. The Court explained that under § 105(a), a bankruptcy court has statutory authority to issue any order that is "necessary or appropriate" to carry out the provisions of the Bankruptcy Code. *Id.* at 1194. However, it is "hornbook law" that § 105(a) does not allow a bankruptcy court to "override explicit mandates of other sections of the Bankruptcy Code." *Id.* Because the bankruptcy court's order contravened an express provision of the Code, the Court held that the bankruptcy court's relief "exceeded the limits of its authority under § 105(a) and its inherent powers." *Id.* at 1195.[31]

In light of *Siegel*, given the comprehensive statutory framework under §§ 523 and 727 and express provisions of the Code that provide methods to challenge or revoke the debtor's discharge and to except certain debts from the discharge, invocation of § 105 as a basis for the relief requested by Ballard is outside this Court's authority. *Id.* at 1194 (stating that although

---

[31] The *Siegel* decision has since been used as the basis to limit bankruptcy courts' equitable authority in various contexts *See In re Montes*, 526 B.R. 397, 403 (Bankr. D.N.M. 2015) (finding that because of *Siegel*'s "cautions against straying too far from the Code language, whether in the name of 'good faith,' equity, or something else," and because "[t]here are plenty of Code-based ways to protect creditors and the integrity of the bankruptcy system if need be," there is no *per se* prohibition against filing a Chapter 13 case before a prior Chapter 7 case has been closed if the discharge has been entered in the first case and the debts in the two cases do not overlap); *In re Alexander*, C/A No. 11-74515-SCS, 2014 WL 3511499, at *14 (Bankr. E.D. Va. July 16, 2014) *aff'd*, 524 B.R. 82 (E.D. Va. 2014) (finding that the bankruptcy court could not use § 105(a) to enter an order establishing that the creditor had a valid first-priority lien on the property at issue because invoking § 105(a) to do so "would negate the express effect of § 544 . . . ."); *In re Kutumian*, C/A No. 13-14675-B-7, 2014 WL 2024789 (Bankr. E.D. Cal. May 15, 2014) (denying the debtor's request for damages for civil contempt under § 105(a) in connection with a willful violation of the automatic stay in addition to actual damages under § 362(k)(1) because the debtor sought to recover attorney's fees and costs that were expressly unavailable under § 362(k)(1) and controlling case law, even though courts have traditionally recognized § 362(k)(1) damages and § 105(a) contempt sanctions as two available remedies for stay violations).

a bankruptcy court has statutory authority to issue any order necessary to carry out the provisions of the Code under § 105(a), "in exercising those statutory and inherent powers, a bankruptcy court may not contravene specific statutory provisions"). Therefore, Ballard's reliance on these equitable principles and § 105(a) is misplaced and Thoennes is entitled to summary judgment on Ballard's equitable causes of action as a matter of law.

Although this determination disposes of Ballard's equitable demands, the Court will comment further on the applicability of each theory of equitable relief claimed by Ballard.

### b. Considering the Facts in the Light Most Favorable to the Non-Movant, Ballard's Equitable Claims Fail as a Matter of Law

#### i. Unclean Hands

Ballard claims Thoennes failed to disclose material information on his bankruptcy petition and schedules in order to obtain a discharge and is, therefore, precluded from asserting his bankruptcy discharge in response to efforts to enforce the Final Judgment.

"The purpose of the unclean hands doctrine is to prevent a court from aiding or abetting a party in the commission of a fraud or other misconduct." *In re Lafferty*, 469 B.R. 235, 245–46 (Bankr. D.S.C. 2012) (quoting *In re Janssens*, 449 B.R. 42, 65 (Bankr. D. Md. 2010)). Even assuming Thoennes failed to include material information on his petition and schedules, as discussed above, § 727 provides a specific remedy to address any such conduct within certain time limits before entry of discharge and additional time to request revocation of discharge on grounds asserted here. Ballard had notice of the bankruptcy and applicable deadlines and failed to act. Ballard has failed to show the Court, even viewing the facts in the light most favorable to him, how the theory of "unclean hands" offers relief.

## ii. LACHES, ESTOPPEL, & WAIVER

Ballard contends Thoennes cannot assert his bankruptcy discharge in response to efforts to enforce the Final Judgment under the theories of laches, estoppel, and waiver because Thoennes did not raise his discharge in the State Court Action until responding to post-judgment discovery requests and did not correctly list details of the State Court Action on his initial bankruptcy petition and schedules. Ballard argues he has been prejudiced as a result of these facts because he believed Thoennes' discharge would not apply to the Final Judgment and if Thoennes asserted his discharge earlier, Ballard claims he "could" have filed a proof of claim seeking distribution from the bankruptcy estate, filed an adversary proceeding pursuant to §§ 523 or 727, or sought other relief in the state court.

After a careful review of the timeline of relevant events in this case, Thoennes' bankruptcy, and the State Court Action, the Court finds no merit within this record to Ballard's argument that he was in some way prejudiced by Thoennes' actions or failure to act. Section 523(a)(3), which was not asserted by Ballard as a basis to enforce the Final Judgment, states that a discharge under § 727 does not discharge a debt:

> neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit--
>> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
>> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request[.]

11 U.S.C. § 523(a)(3).  Under this section, "[t]o be properly listed, the name and address of

the creditor must be stated." *In re Circle K Corp.*, 198 B.R. 784, 789 (Bankr. D. Ariz. 1996).

Further,

> [b]y its plain terms, however, [§ 523(a)(3)] is designed to protect only the
> creditor who is completely absent from the debtor's schedules, and who does
> not receive actual notice of the bankruptcy case.  It is not structured or intended
> as a punitive measure to preserve all pre-petition money obligations which a
> debtor may not schedule to the penny, or as to which a debtor may not describe
> the factual and legal basis with Holmesian accuracy and conciseness.  It is not
> intended as a safe haven for creditors with actual knowledge of a pending
> bankruptcy case who neglect to promptly evaluate and advance their interests
> in the case.  Rather, it is intended to act in organic conjunction with numerous
> other provisions of the Bankruptcy Code and Rules, which operate on the
> understanding that debtors and creditors in bankruptcy cases have independent
> obligations to safeguard their own interests in anticipation of the grant of
> discharge in bankruptcy.

*In re Bowen*, 89 B.R. 800, 805 (Bankr. D. Minn. 1988).

Section 523(a)(3) describes the nature of the notice a debtor must give to a creditor to

avoid an exception to discharge on lack of notice grounds, and Thoennes met its requirements.

Ballard was listed as a creditor on Thoennes' Schedule F and included on the creditor matrix

and it is undisputed that he received timely notice of Thoennes' bankruptcy, the applicable

deadlines, and his discharge.  The fact that the State Court Action was not accurately described

on Thoennes' initial Statement of Financial Affairs is of no consequence and provides no basis

for equitable relief and the Bankruptcy Code does not require a debtor to assert his discharge

in a different manner. *See In re Burdel*, 126 B.R. 278, 279 (Bankr. N.D. Ohio 1991) (stating

that § 523(a)(3)(B) "places a burden on creditors with knowledge of a bankruptcy proceeding

to act in order to protect their rights.  This furthers the bankruptcy policy of affording a fresh

start to the debtor by preventing a creditor, who knew of a bankruptcy proceeding but who

did not receive a formal notification, from standing back, allowing the bankruptcy to proceed

without adjudication of his claim, and then asserting that the debt owed him is

nondischargeable. (citing *Matter of Compton*, 891 F.2d 1180, 1187 (5th Cir. 1990))).

> The doctrine of equitable estoppel:
>
> applies in the bankruptcy context when four criteria are met: 1) the party
> estopped knew the relevant facts; 2) the party estopped intended for its conduct
> to be acted or relied upon, or the party acting had the right to believe the
> conduct was so intended; 3) the party acting was ignorant of the true facts; and,
> 4) the party acting relied on the conduct to its injury.

*In re JK Harris & Co., LLC*, 512 B.R. 552, 560 (Bankr. D.S.C. 2012) (quoting *In re Varat*

*Enterprises, Inc.*, 81 F.3d 1310, 1317 (4th Cir. 1996)).  Under South Carolina law, "[a]s related

to the party claiming the estoppel, the essential elements are: (1) lack of knowledge and of the

means of knowledge of the truth as to the facts in question, (2) reliance upon the conduct of

the party estopped, and (3) prejudicial change in position." *Rushing v. McKinney*, 370 S.C.

280, 294, 633 S.E.2d 917, 924 (Ct. App. 2006) (quoting *S. Dev. Land & Golf Co., v. S.C. Pub.*

*Serv. Auth.*, 311 S.C. 29, 33, 426 S.E.2d 748, 750 (1993)).

There is no evidence in the record to support lack of knowledge, as Ballard had the

relevant facts at his disposal.  Ballard knew or had the facts necessary to determine that unless

challenged in a timely fashion, the discharge injunction would be entered and could apply to

relieve Thoennes from debts of creditors given notice of his bankruptcy and within the scope

of § 727.  Ballard failed to act timely to protect his rights and has shown no legal obligation

requiring Thoennes to assert his discharge beyond scheduling Ballard as a creditor and giving

notice of the bankruptcy.  Ballard has not shown the Court any facts to support a finding that

Thoennes intended for Ballard to rely, that Ballard had a right to rely on Thoennes' acts or

failure to act, or that Ballard did in fact rely on Thoennes' acts or failure to act.

> Waiver may be found where a party voluntarily relinquishes a known right or
> claim . . . . A waiver also does not require consideration to be valid and may
> be either expressed or implied.  Consequently, acts inconsistent with the

continued assertion of a right, such as a failure to insist upon the right, may
constitute waiver.

*In re Workman*, 373 B.R. 460, 465 (Bankr. D.S.C. 2007) (citing federal and South Carolina

case law).   Similarly, South Carolina law provides "[w]aiver is the voluntary and intentional

relinquishment of a known right.   It may be implied from circumstances indicating an intent

to waive.   Acts that are inconsistent with the continued assertion of a right may also give rise

to a waiver." *Provident Life & Accident Ins. Co. v. Driver*, 317 S.C. 471, 478–79, 451 S.E.2d

924, 929 (Ct. App. 1994) (citations omitted).

Ballard cites two Seventh Circuit cases in support of his waiver argument.   However,

both cases are factually distinguishable and, therefore, offer no support.   In the first case, after

the jury returned a verdict in favor of the plaintiff, one of the defendants argued the trial court

erred in refusing to grant him leave to plead the affirmative defense of discharge in

bankruptcy. *Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951, 955 (7th Cir. 1998).   The first trial

began in September 1990, but was declared a mistrial after the jury could not reach a verdict.

*Id.* at 954.   On the eve of the second trial, which began on July 11, 1994, the defendant asserted

for the first time that he filed for bankruptcy relief in 1992 and received a discharge on April

13, 1992; therefore, all claims against him should be dismissed because of his bankruptcy

discharge. *Id.* at 967–68.   After the trial court denied the defendant's motion to dismiss,

finding that the defendant waived this affirmative defense under Fed. R. Civ. P. 8(c), the

defendant then sought to amend his answer to assert this defense, which was also denied. *Id.*

at 968.   The Seventh Circuit held that the trial court did not abuse its discretion in denying

defendant's request for leave to amend. *Id.*   The court found that the trial court acted

reasonably because two years had passed from the time the discharge was entered to when the

defendant first raised it as a defense on the eve of trial, despite actively participating in two

pretrial settlement conferences in the interim. *Id.*   Additionally, the defendant's purported

defense of discharge was insufficient as a matter of law under § 523(a)(3) because, unlike this

case, the record in *Gagan* failed to include any notice or actual knowledge on the plaintiff's

part of the defendant's bankruptcy due to the fact that the defendant's schedules did not list

the plaintiff as a creditor or give his address. *Id.*

The second case, *Bauers v. Bd. of Regents of Univ. of Wisc.*, 33 F. App'x 812 (7th Cir.

2002), is also ineffective.   The dispute in *Bauers* concerned federal causes of action arising

from the plaintiff's employment termination. *Id.* at 815.   The plaintiff received a bankruptcy

discharge in 1997 and brought a lawsuit against her employer ten months later in 1998, after

her employment ended earlier that year. *Id.*   The defendant asserted a counterclaim for

conversion of funds during the plaintiff's employment.   After the jury found in favor of the

defendant's counterclaim and awarded damages, the plaintiff filed a Fed. R. Civ. P. 60(b)

motion to vacate the judgment, arguing for the first time that the counterclaim had been

discharged in her bankruptcy proceeding. *Id.*   The plaintiff did not list the defendant as a

creditor in her bankruptcy schedules, did not plead discharge in bankruptcy as an affirmative

defense to the counterclaim, and did not inform the defendant of her discharge during the

pendency of the lawsuit. *Id.* at 817.   The Seventh Circuit, therefore, found the trial court

properly denied the plaintiff's motion because she waived this affirmative defense under Fed.

R. Civ. P. 8(c). *Id.*

Unlike *Gagan* and *Bauers*, Thoennes' bankruptcy was filed after the liability

determination was made, but before the State Court Action was finalized.   Most importantly,

Ballard was listed on Thoennes' bankruptcy schedules and creditor matrix and received notice

of Thoennes' bankruptcy, applicable deadlines, and his discharge.   Even viewing the facts in

the light most favorable to the non-movant, Ballard has failed to show as a matter of law how Thoennes' conduct in defending himself on appeal and thereafter in state court could be interpreted as a voluntary relinquishment of his right to assert his discharge in bankruptcy. Ballard has not directed the Court to any authority that created any obligation or affirmative duty imposed on Thoennes to assert his discharge before he did so, nor any act or failure to act that could be interpreted as a waiver under the authorities presented in support.[32]

Lastly, "[l]aches is 'defined as neglect to assert [a] right or claim which, taken together with lapse of time and other circumstances causing prejudice to adverse party, operates as [a] bar in [a] court of equity.'" *In re Kean*, 207 B.R. 118, 123 (Bankr. D.S.C. 1996) (quoting BLACK'S LAW DICTIONARY 786 (5th ed. 1979)).  "Laches is sustainable only on proof of both of two elements: '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" *Id.* (quoting *In re Paul*, 194 B.R. 381 (Bankr. D.S.C. 1995).  Additionally, under South Carolina law:

> [I]f a party, knowing his rights does not seasonably assert them, but by unreasonable delay causes his adversary to incur expenses or enter into obligations or otherwise detrimentally change his position, then equity will ordinarily refuse to enforce those rights.  The party seeking to establish laches must show (1) delay, (2) unreasonable delay, and (3) prejudice.

*Emery v. Smith*, 361 S.C. 207, 215, 603 S.E.2d 598, 602 (Ct. App. 2004).  "Laches connotes not only an undue lapse of time, but also negligence and opportunity to have acted sooner." *RWE NUKEM Corp. v. ENSR Corp.*, 373 S.C. 190, 199, 644 S.E.2d 730, 734–35 (2007) (citation omitted).

---

[32] Although Ballard argued Thoennes waived his right to assert "discharge in bankruptcy" as an affirmative defense under Rule 8(c), SCRCP, Ballard has failed to show how that rule is applicable to the facts set forth in the timeline of this case because in the State Court Action the Trial Order that determined liability had already been entered and that matter was on appeal at the time Thoennes filed for bankruptcy relief and received his discharge.

Even viewed in the light most favorable to Ballard, he has failed to show how the facts support a finding of a lack of diligence or unreasonable delay. *See Shay v. Austin*, 466 F. Supp. 2d 664, 671 (D.S.C. 2006) (granting the plaintiff's motion for summary judgment because, even assuming the defendant could establish prejudice, the defendant could not establish unreasonable delay based on the facts of the case). Thoennes asserted his discharge through the bankruptcy proceeding itself, which occurred during the pendency of the State Court Action, by listing Ballard as a creditor and giving him notice of the bankruptcy, the applicable deadlines, and the discharge. Ballard has failed to establish any obligation requiring Thoennes to assert his discharge at an earlier date or in a different manner.

Based on the foregoing, Thoennes is entitled to summary judgment on these causes of action as a matter of law.

## IV.    BALLARD'S CLAIMS PURSUANT TO 11 U.S.C. § 523(A)(19)

There is no applicable time limit for a § 523(a)(19) determination. *See* Fed. R. Bankr. P. 4007. This provision provides that Thoennes discharge under § 727 did not discharge the Final Judgment if it:

> **(A)** is for--
>> **(i)** the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
>> **(ii)** common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
> **(B)** results, before, on, or after the date on which the petition was filed, from -
>> **(i)** any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
>> **(ii)** any settlement agreement entered into by the debtor; or
>> **(iii)** any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

11 U.S.C. § 523(a)(19).

Here it is undisputed that § 523(a)(19)(B) is satisfied because there was a judgment entered against Thoennes by the state court.  It is also clear that no court has determined that Thoennes committed fraud.[33]  The issues are: (a) whether the Final Judgment is for Thoennes' violation of South Carolina's securities laws; and/or (b) whether it is for Thoennes' deceit or manipulation in connection with the purchase or sale of any security.

### a. THE FINAL JUDGMENT IS NOT FOR A VIOLATION OF STATE SECURITIES LAWS

The state court's Trial Order that led to the Final Judgment found, in relevant part, that Thoennes was liable for shareholder oppression, from which Ballard sought relief pursuant to S.C. Code Ann. §§ 33-14-300 and 310.  These provisions are found under Chapter 14 of the South Carolina Business Corporation Act of 1988, which is titled "Dissolution."  Ballard contends the term "State securities laws" under § 523(a)(19)(A)(i) includes the state statute relevant here because it allows for the buyout of securities as a remedy to shareholder oppression.

One of the central purposes of the Bankruptcy Code is to provide the debtor with a "fresh start." *See Grogan v. Garner*, 498 U.S. 279, 286, 111 S. Ct. 654, 659, 112 L. Ed. 2d 755 (1991).  In light of this, the Supreme Court has adopted a rule of construction that requires exceptions to discharge to be interpreted narrowly. *See Kawaauhau v. Geiger*, 523 U.S. 57, 62, 118 S. Ct. 974, 140 L. Ed. 2d 90 (1998) ("[E]xceptions to discharge should be confined to those plainly expressed[.]" (internal quotation marks omitted)); *see also In re Rountree*, 478 F.3d 215, 219 (4th Cir. 2007) ("When considering the applicability of an exception to discharge, we construe the exception narrowly 'to protect the purpose of providing debtors a fresh start.'" (quoting *In re Biondo*, 180 F.3d 126, 130 (4th Cir. 1999)); 4 COLLIER ON

---

[33] At the hearing on the Motion, Ballard's counsel admitted that fraud was not at issue.

BANKRUPTCY ¶ 523.05 (16th ed. 2012) ("In determining whether a particular debt falls within one of the exceptions of section 523, the statute should be strictly construed against the objecting creditor and liberally in favor of the debtor.").

Whether a debt is for a violation of securities laws under § 523(a)(19)(A)(i) has been addressed by the Tenth Circuit in *Okla. Dep't of Sec., ex rel. Faught v. Wilcox*, 691 F. 3d 1171 (10th Cir. 2012).  In *Wilcox*, the Oklahoma Department of Securities brought lawsuits against investors in a Ponzi scheme perpetrated by a third party to recoup funds distributed in the Ponzi scheme on grounds of unjust enrichment, fraudulent transfer, and equitable lien. *Id.*  The debtors were among those sued and were found liable only on the basis of unjust enrichment. *Id.*  After the debtors filed for bankruptcy relief, the Oklahoma Department of Securities initiated an adversary proceeding to have the judgment debts excepted from their discharge pursuant to § 523(a)(19). *Id.* at 1173.  On appeal, the Tenth Circuit found that, based on the plain language of the statute, the debts did not fall under § 523(a)(19) because the judgments were not "for a violation" of securities laws due to the fact that the debtors were not charged with securities violations and were only found liable for unjust enrichment, even though the matter involved a third party's violation of securities laws. *Id.* at 1175.  The plain language of the statute and *Wilcox* instruct this Court to find that the Final Judgment does not fit within the provisions of § 523(a)(19)(A)(i).

Even though the *Wilcox* court's findings were based on the plain language of the statute, it also looked to the statutory history of § 523(a)(19) to further support its conclusion.

> [Section] 523(a)(19) was enacted as part of the Sarbanes–Oxley Act in 2002. The Senate Report on the draft legislation indicates it was enacted to address perceived loopholes in securities laws after the Enron debacle. The early language of § 523(a)(19)(A) excepted from discharge a judgment that "arises under a claim relating to" securities violations.  The language was subsequently changed to except a judgment that "is for" securities violations.

*Id.* (internal citations and footnote omitted); *see also In re Sherman*, 658 F.3d 1009, 1016 (9th

Cir. 2011) ("The § 523(a)(19) exception, enacted as part of the Sarbanes–Oxley Act,

responded to concerns that the Bankruptcy Code 'permitted wrongdoers to discharge their

obligations under court judgments or settlements based on securities fraud and other securities

violations.' S. Rep. No. 107–146, at 8 (2002).  Specifically, Congress sought to address the

obstacles posed by the fact that the elements of various securities violations do not perfectly

overlap with the elements of fraudulent conduct within the meaning of § 523(a)(2)(A),

frequently forcing the SEC to relitigate otherwise resolved cases before a bankruptcy judge

because the violator was not collaterally estopped from challenging the claim of fraud. 148

Cong. Rec. S7418, S7419 (2002).  In other words, one reason Congress enacted the exception

was to target those parties who are guilty of securities violations, in order to ensure that

judgments for securities violations are treated, in bankruptcy, like judgments for fraud."),

*abrogated by Bullock v. BankChampain, N.A.*, 133 S. Ct. 1754, 185 L. Ed. 2d 922 (2013).

The Tenth Circuit also reasoned that the legislative history "consistently refers to 'holding

accountable those who incur debts by *violating* our securities laws' . . . ." *Id.* (emphasis in

original) (quoting S. Rep. No. 107-146 at 8).

Considering the plain language of § 523(a)(19)(A)(i) and the reasoning of *Wilcox*,

which was more closely related to a violation of securities laws than the instant matter, the

Court finds the Final Judgment does not indicate a debt "that is for the violation of . . . any of

the State securities laws, or any regulation or order issued under such . . . State securities

laws."  The state court found Thoennes liable for shareholder oppression, not any violation of

securities laws. *See In re Gilley*, C/A No. 12-11443, 2013 WL 4460499, at *3 (Bankr.

M.D.N.C. Aug. 19, 2013) (finding that a settlement order that did not include the debtor's

admission of guilt sufficiently established the debt was for violations of securities laws

because the complaint only alleged violations of securities laws, unlike the *Wilcox* debtors

who were not charged with violations of securities laws), *aff'd per curiam sub nom. Gilley v.

S.E.C.*, 590 F. App'x 227 (4th Cir. 2015).    The judicial dissolution statute that provides for

the purchase of securities as a remedy to Thoennes' oppression does not produce a debt for

violations of state securities laws or regulations.    Accordingly, the debt owed to Ballard is not

an exception to Thoennes' discharge pursuant to § 523(a)(19)(A)(i).

> **b.  THE FINAL JUDGMENT IS NOT FOR COMMON LAW FRAUD, DECEIT, OR
> MANIPULATION IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES**

The Trial Order specifically found the state court "defendants acted in a manner that

is ***illegal, oppressive, and unfairly prejudicial*** to Ballard, within the meaning of S.C. Code

§ 33-14-300(2)(ii)."[34]    The South Carolina Supreme Court "affirm[ed] the circuit court's

***finding of oppression*** and its requirement that [the state court defendants] purchase Ballard's

stock at fair market value." *Roberson*, 399 S.C. at 597–98, 733 S.E.2d at 112.    The state court

expressly omitted any finding of fraudulent conduct and there was no finding of deceit or

manipulation.    However, Ballard contends the findings of the Trial Order "implicate" that

Thoennes committed deceit or manipulation in connection with the purchase or sale of a

security.    Additionally, Ballard claims there is a causal link between Thoennes' shareholder

oppression and the purchase or sale of securities sufficient to satisfy § 523(a)(19)(A)(ii).

> **i.  ANY ALLEGED DECEIT OR MANIPULATION WAS NOT IN CONNECTION
> WITH THE PURCHASE OR SALE OF SECURITIES**

In support of his argument that the debt is for deceit or manipulation "in connection

with the purchase or sale of any security," Ballard relies on *In re Pre-Press Graphics Co.,*

---

[34] ECF No. 1, Ex. B (emphasis added).

*Inc.*, 307 B.R. 65 (N.D. Ill. 2004).  In *Pre-Press Graphics*, a Chapter 11 debtor sought to

subordinate a shareholder creditor's claim to the claims of other creditors pursuant to § 510(b),

which provides in relevant part: "[f]or the purpose of distribution under this title, a claim . . .

for damages arising from the purchase or sale of such a security . . . shall be subordinated to

all claims or interests that are senior to or equal the claim or interest represented by such

security . . . ." 11 U.S.C. § 510(b).  The issue before the court was whether the creditor's claim

for shareholder oppression "arose from" the purchase or sale of the debtor's securities such

that it should be subordinated to other creditors. *Pre-Press Graphics*, 307 B.R. at 71.  The

court found that the term "arises from" should be interpreted broadly in that context to include

"claims beyond those arising at the time stock is issued[,]" *id.* at 75, so long as there is some

causal link between the purchase or sale of a security and the claim at issue. *Id.* at 78.

   After a careful review of that case, the Court finds that *Pre-Press Graphics* lends no

support to Ballard's legal argument.  It is true that there is some factual similarity between the

underlying debt in this case and *Pre-Press Graphics*; however, Ballard's assertion that the

statutory terms "arises from" and "in connection with" should be interpreted the same must

fail.  *Pre-Press Graphics* involved analysis of the legislative history of and purpose behind

§ 510(b), which resulted in a broad interpretation of the term "arises from."  Not only did

Congress use different terms in the relevant statutes, §§ 510(b) and 523(a)(19) also have no

common purpose or legislative history.  Further, unlike the *Pre-Press Graphics* court's broad

interpretation of § 510(b), "[w]hen considering the applicability of an exception to discharge,

we construe the exception narrowly 'to protect the purpose of providing debtors a fresh start.'"

*Rountree*, 478 F.3d at 219 (quoting *Biondo*, 180 F.3d at 130).  Any interpretation of the "arises

from" portion of § 510(b) found in *Pre-Press Graphics* is simply inapplicable to the "in connection with" language found in § 523(a)(19)(A)(ii).

The wrongful conduct here, according to the state court, was for shareholder oppression. Ballard has not shown how the facts indicate this wrongful conduct occurred "in connection with the purchase of sale of any security." The record, even considered in the light most favorable to Ballard, does not support Ballard's claims pursuant to § 523(a)(19)(A)(ii).

ii. No "Deceit or Manipulation" Was Found by the Trial Court

Although the Court concludes the debt is not "in connection with the purchase or sale of any security" and summary judgment may be granted on these findings alone, it will also address the parties' other dispute: whether the debt "is for . . . deceit or manipulation."

The South Carolina Supreme Court has previously held "that the terms 'oppressive' and 'unfairly prejudicial' pursuant to S.C. Code Ann. § 33-14-300 are elastic terms whose meaning varies with the circumstances presented in a particular case." *Kiriakides v. Atlas Food Sys. & Servs., Inc.*, 343 S.C. 587, 602, 541 S.E.2d 257, 266 (2001). In adopting a case-by-case analysis for determining whether a party has acted "oppressively," the *Kiriakides* court reasoned:

> While business corporation statutes may attempt to provide certainty and clarity in the law to enhance the attractiveness of doing business, the definition of oppression has been left to judicial construction on a case-by-case basis. Such an approach has been suggested by the Model Close Corporation Supplement which expressly indicates that no attempt has been made to statutorily define oppression, fraud or prejudicial conduct, leaving these "elastic terms" to judicial interpretation . . . The judicial construction of the definition of oppressive conduct is well-suited to the diversified, fact-specific disputes among shareholders of closely-held corporations. However, the judicial development of a meaningful standard for defining oppressive conduct, apart from fraud or mismanagement, is a difficult task.

*Id.* at 602–03 (quoting Sandra K. Miller, *Should the Definition of Oppressive Conduct by the Majority Shareholders Exclude a Consideration of Ethical Conduct and Business Purpose*, 97 DICK. L. REV. 227, 229–30 (Winter 1993)).

Non-dischargeability provisions are to be interpreted narrowly. *Kawaauhau*, 523 U.S. at 62, 118 S. Ct. 974. Additionally, as this Court previously expressed in *In re Pujdak*, 462 B.R. 560, 574–75 (Bankr. D.S.C. 2011), the Court's dischargeability determination is limited to the language in the Trial Order.[35] "The inclusion of § 523(a)(19)(B) strips the bankruptcy court of its ability to determine whether the debtor did in fact violate the securities laws [or commit fraud, deceit, or manipulation in connection with the purchase or sale of any security]; therefore, the non-bankruptcy court's liability determination should have preclusive effect in the nondischargeability action." *Id.* at 574 (citations omitted). Section 523(a)(19) does not add any new elements for this Court to consider in determining whether the debt is dischargeable. "Thus, a determination of dischargeability under § 523(a)(19) is made when the state court makes a finding of a violation of the state securities laws [or for fraud, deceit, or manipulation in connection with the purchase or sale of any security] and a judgment is entered." *Id.* at 575.[36] Therefore, the Court concludes that, as a matter of law, the underlying

---

[35] There is a split in authority regarding the substantive area in which a bankruptcy court can adjudicate matters under § 523(a)(19). This Court has previously adopted the narrow view that § 523(a)(19)(B) requires the debt to be memorialized in a settlement or order from a nonbankruptcy forum. *Pujdak*, 462 B.R. at 574–75 (citations omitted); *see also In re Collier*, 497 B.R. 877, 903 (Bankr. E.D. Ark. 2013); *In re Bundy*, 468 B.R. 916, 922 (Bankr. E.D. Wash. 2012); *In re Anderson*, C/A No. 10-20651-TLM, 2012 WL 3133827, at *1 (Bankr. D. Idaho Aug. 1, 2012); *In re Jafari*, 401 B.R. 494, 497 (Bankr. D. Colo. 2009); *In re Zimmerman*, 341 B.R. 77, 80 (Bankr. N.D. Ga. 2006). Other courts adopting the broad view find that a bankruptcy court can determine the liability, damages, and dischargeability of the debt for securities violations and securities fraud and issue its own judgment to satisfy § 523(a)(19)(B). *See In re Sato*, 512 B.R. 241, 251 (Bankr. C.D. Cal. 2014); *In re Hill*, 495 B.R. 646, 661 (Bankr. D.N.J. 2013); *In re Jensen–Ames*, 2011 WL 1238929, *8 (Bankr. W.D. Wash. Mar. 30, 2011); *In re Jansma*, 2010 WL 282511, *5 (Bankr. N.D. Ill. Jan. 21, 2010); *In re Chan*, 355 B.R. 494, 505 (Bankr. E.D. Penn. 2006).

[36] Unlike § 523(a)(19), other subsections of § 523(a) may require additional proof or different elements than the underlying action in order to determine whether the debt is dischargeable. *Compare* 11 U.S.C. § 523(a)(11) *with* 11 U.S.C. § 523(a)(4); *see also Pujdak*, 462 B.R. at 575 ("The merits of the § 523(a)(19) discharge exception are indistinguishable from the merits of the underlying legal claim. Unlike other subsections of § 523(a) (i.e.,

judgment giving rise to the debt must actually "be for" deceit or manipulation in connection with the sale or purchase of a security – not merely insinuate that deceit or manipulation could have occurred as argued here.

Moreover, in light of South Carolina's fluid definition of "oppressive" under S.C. Code Ann. § 33-14-300, the state court had the opportunity to explicitly find Thoennes' oppressive conduct was also deceitful and/or manipulative. While each of these terms connote negative conduct of varying degrees, the record does not indicate and Ballard has not shown how the record before the Court establishes that the finding of oppression equals deceit or manipulation. Pursuant to the plain meaning of the bankruptcy statute, a review of the Trial Court Order and the Final Judgment indicates that the state court did not make a finding of deceit or manipulation. Therefore, in response to Thoennes' Motion, Ballard has not "proffer[ed] countering evidence sufficient to create a genuine factual dispute." *Proveaux*, 2008 WL 8874286 at 3 (quoting *Dig It, Inc.*, 129 B.R. at 66).

Additionally, legislative history shows "[t]he early language of § 523(a)(19)(A) excepted from discharge a judgment that ***'arises under a claim relating to'*** common law fraud, deceit, or manipulation in connection with the purchase or sale of any security. *Wilcox*, 691 F. 3d at 1175 (emphasis added) (citations omitted). However, "[t]he language was subsequently changed to except a judgment that ***'is for'*** common law fraud, deceit, or manipulation in connection with the purchase or sale of any security. *Id.* (emphasis added). The Final Judgment does not indicate a debt that "is for" any of these.

---

§ 523(a)(2), (4), (6), (7), and (9)), which establish exceptions to discharge defined by elements specified in the Bankruptcy Code, the § 523(a)(19) discharge exception is defined, at least in part, in terms of claims established under specified non-bankruptcy statutes." (quoting *Chan*, 355 B.R. at 503)).

Finally, it appears the terms "deceit" and "manipulation" were included in § 523(a)(19) to incorporate certain violations of the Securities Act of 1933 and the Securities Exchange Act of 1934, which use these specific terms. *See e.g.* 15 U.S.C. § 77t (1995) (providing a different penalty for violators of securities laws if the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement"); 15 U.S.C. §§ 78i (titled "Manipulation of securities prices") and 78j (titled "Manipulative and deceptive devices" and prohibiting "in connection with the purchase or sale of any security" the use of "any manipulative or deceptive device"); *see also Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199, 96 S. Ct. 1375, 1384, 47 L. Ed. 2d 668 (1976) (finding that use of the term "manipulative" in federal securities law "is especially significant.  It is and was virtually a term of art when used in connection with securities markets.  It connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities.").  The legislative history of § 523(a)(19) states that "[u]nder current laws, state regulators are often forced to 'reprove' their fraud cases in bankruptcy court to prevent discharge because remedial statutes often have different technical elements than the analogous common law causes of action." S. Rep. 107-146, 16.  It is most logical that Congress included these terms of art to prevent "wrongdoers to discharge their obligations under court judgments or settlements based on securities fraud and other securities violations" and to close this "loophole" to allow "defrauded investors [to] recoup their losses and to hold accountable those who incur debts by violating our securities laws." *Id.* at 10.  The statute is not directed to the facts at hand.

Thoennes is entitled to summary judgment on Ballard's § 523(a)(19) claims.

## V.   THOENNES' POST-PETITION LIABILITY

The findings above may indicate that Thoennes has prevailed in various battles, but it is unclear who will prevail in the overall war.  While Thoennes' discharge is applicable to the Final Judgment, that discharge has its limits.  *See O'Loghlin v. County of Orange*, 229 F.3d 871, 875 (9th Cir. 2000) (finding the creditor's claims against the Chapter 9 debtor for its pre-discharge violations of the ADA were barred by the discharge, but the post-discharge claims that arose from additional "illegal conduct occurring after discharge" were not barred by the discharge); *see also Holcombe v. US Airways, Inc.*, 369 F. App'x 424, 428 (4th Cir. 2010) (finding plaintiff's discrimination claims against the Chapter 11 debtor arising from discriminatory acts that occurred after confirmation of the plan were not discharged, and rejecting plaintiff's "continuing violation" theory that her pre-confirmation claims persisted into the post-confirmation period).

Section 727 of the Bankruptcy Code states in relevant part:

> a discharge under subsection (a) of this section discharges the debtor from ***all debts that arose before the date of the order for relief*** under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

11 U.S.C § 727(b) (emphasis added).  Thoennes' Chapter 7 petition was filed on December 2, 2011.  Because § 727(b) discharges debts that arose before the date of the order for relief, any portion of the Final Judgment that arose before that date is within the scope of the discharge.[37]

---

[37] Section 301 of the Bankruptcy Code provides:
>   (a) A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter.

The Final Judgment required Thoennes and the other defendants to buy out Ballard's interest in Warpath for a certain price, which was established as a lump sum value. The Court later noted there was "undisputed evidence that the conduct of the defendants previously held to constitute shareholder oppression had continued unchanged and unabated up to the time of the [August 6, 2013 valuation] hearing."[38]  Therefore, the conduct resulting in the Final Judgment was not abated post-petition. These facts are sufficient to create a dispute of fact on this issue: *Is any portion of the obligation set forth in the Final Judgment a claim that arose* **after** *the date of the order for relief?*

This question must be answered not through summary judgment, but through an analysis of disputed facts. The state courts have litigated this dispute since 2008. The state courts heard the evidence and applied state law, resulting in the Trial Court Order and the Final Judgment. Consequently, the state courts are likely in a better position to make this determination in an efficient manner and may be the only forum that is appropriate. *See Pujdak*, 462 B.R. at 574–75. How the Final Judgment could be divided, if appropriate, and where such a determination should take place are issues for another day. However, at this point it is clear that this portion of Thoennes' motion for summary judgment must be denied.

**IT IS, THEREFORE, ORDERED** that summary judgment is **granted** in favor of Thoennes on all of Ballard's claims except the cause of action titled "Post-Discharge Conduct."

**AND IT IS SO ORDERED.**

---

(b) The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.

11 U.S.C. § 301.

[38] ECF No.1, Ex. F.